UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**ROBERT BRADLEY FUSSELL,**
    Petitioner,

v.

**UNITED STATES OF AMERICA,**
    Respondent.

**Case No. 4:22-cv-8009-CLM**
**(4:20-cr-302-CLM-HNJ)**

## MEMORANDUM OPINION

    Robert Bradley Fussell moves to vacate, set aside, or otherwise correct his sentence under 28 U.S.C. § 2255. (Doc. 1). In his motion, Fussell argued that trial counsel was ineffective for failing to (1) properly advise him and investigate evidence about a firearm at issue in his criminal case, and (2) consult him about the appeal process. Under Rule 4 of the Rules Governing § 2255 Proceedings, the court dismissed Fussell's ineffective assistance of counsel claim related to the failure to advise Fussell on and investigate evidence about the firearm. (Doc. 2). The court held an evidentiary hearing on Fussell's claim that counsel was ineffective for failing to consult Fussell about the appeal process.

    For the reasons stated within, the court **WILL DENY** Fussell's motion (doc. 1) and **DISMISS** this case.

### BACKGROUND

    1. <u>2255 motion</u>: In September 2020, Fussell was charged with one count of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); one count of knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and one count of knowingly possessing a firearm with knowledge that he had been convicted of a felony in violation of 18 U.S.C. § 922(g). (Doc. 1 in Case No. 4:20-cr-302-CLM-HNJ).

Attorney Robert Tuten was appointed to represent Fussell on these charges. And Fussell pleaded guilty, after signing a written plea agreement, to all three charges. (Doc. 8 in Case No. 4:20-cr-302-CLM-HNJ). Around three months later, the court sentenced Fussell to 180 months' imprisonment. (Doc. 11 in Case No. 4:20-cr-302-CLM-HNJ). There was an appeal waiver in Fussell's plea agreement subject to these limited exceptions: (1) any sentence imposed in excess of the applicable statutory maximum sentence; (2) any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and (3) claims for ineffective assistance of counsel. (Doc. 8 at 6–7 in Case No. 4:20-cr-302-CLM-HNJ). But the court still informed Fussell at sentencing that he had 14 days to file an appeal and that if he wished to appeal, he "need[ed] to let your lawyer know right away so that you do not miss that 14-day window." (Doc. 16 at 18 in Case No. 4:20-cr-302-CLM-HNJ).

In his § 2255 motion, Fussell alleged that Tuten never consulted Fussell about whether he wanted to appeal and that Fussell's statements in court that he doubted that the § 924(c) charge applied to him should have alerted Tuten to the fact that Fussell would want to appeal. (Doc. 1 at 8). The Government attached an affidavit from Tuten to its response brief. (Doc. 3-1). Tuten's affidavit disputed Fussell's account. According to Tuten, around a week after sentencing, Fussell contacted Tuten to ask questions about appealing his case. (*Id.* at 4). Tuten says that at the end of the conversation he asked Fussell what he wanted to do and Fusell replied, "Just forget it. I guess I'm fucked." (*Id.*). Fussell then replied "no" when Tuten asked "So you don't want to appeal." (*Id.*). Because Fussell and Tuten's affidavits presented competing narratives, the court set this case for a hearing and appointed counsel to represent Fussell during this § 2255 proceeding. *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon [and] determine the issues and make findings of fact and conclusions of law with respect thereto.").

2. <u>Evidentiary hearing</u>: At the evidentiary hearing, Fussell said that Tuten went over the plea agreement with him in person but that he didn't remember any specifics about what Tuten said about the appeal waiver. And according to Fusell, he asked Tuten several times if he could speak to the

prosecutor about the § 924(c) charge because he didn't believe he should have been charged with that count. Fussell claims that he was innocent of that count because someone else placed the gun under his mattress. As Fussell points out, his testimony that he had concerns about the § 924(c) count is bolstered by the transcripts of his change of plea and sentencing hearings. During the change of plea hearing, Fussell said this about the § 924(c) charge:

> THE DEFENDANT: Your Honor, the – is there any way – I know that the firearm was not mine. You know, I'm willing – I'm willing to plead, but is there any way – is it still possible for the 924 to be – be dismissed?

(Doc. 19-1 at 3). After talking with Fussell and his attorney, the court asked Fussell if he wished "to plead guilty to all three of these charges even though, obviously, that means that your request for the government to dismiss the 924(c) charge has been rejected and you are now pleading guilty to that charge?" (*Id.*). And Fussell responded, "Yes, sir." (*Id.*).

But Fussell again brought up his issues with the 924(c) charge at sentencing. When addressing the court, Fussell said "you know, the 924, I really had no part in that, sir. You know, I know that it's – I hope that it's not too late to ask that the prosecution may be willing to – to drop that – that charge." (Doc. 19-2 at 9). The Government responded that there was "no possibility to dismiss that charge" and then recounted the factual basis for the charge. (*Id.* at 11). Following the Government's response, the court pronounced Fussell's sentence of 180 months' imprisonment. (*Id.* at 11–13). And Fussell says that he never talked to Tuten about an appeal after the sentencing hearing. According to Fussell, if he had talked to Tuten about his appeal rights, he would have wanted to appeal to challenge his 924(c) conviction because he "never had anything to do with that gun."

Tuten agreed that Fussell "was very dissatisfied that he was charged with two gun charges" and thought that he shouldn't have been charged with the 924(c) count. But when Tuten talked to the AUSA about this issue, she told him that the U.S. Attorney's Office didn't negotiate away or dismiss gun

3

charges on a plea. Tuten also said that when he received the proposed plea agreement from the Government he took it to the Morgan County Jail and discussed it with Fussell. According to Tuten, he discussed the plea agreement's appeal waiver with Fussell and told Fussell "If you take the deal, you can't appeal." And because Fussell wanted to get out of jail as early as possible, he decided to resolve the case by accepting the plea agreement and pleaded guilty.

Tuten says that he again talked to Fussell about his appeal rights after sentencing. According to Tuten, about a week after sentencing, Fussell called his office. Tuten's paralegal answered, told Tuten Fussell was calling, and reminded Tuten that he had closed Fussell's file and sent it to an off-site storage facility. The first thing Fussell asked Tuten was: "What do you think my chances on appeal would be." Tuten says he told Fussell that he had only a snowball's chance because of the appeal waiver in his plea agreement. Fussell then responded "no" and hung up the phone when Tuten asked him if he wanted to appeal his case. Tuten said that if Fussell had instead answered "yes" he would have filed something as quickly as he could.

## DISCUSSION

Fussell asks the court to find that Tuten provided ineffective assistance of counsel because he did not consult Fussell about whether he wanted to appeal his 924(c) conviction. The two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to Fussell's claim. *See Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008). Under *Strickland*, to show ineffective assistance of counsel, Fussell must prove "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quotations and citations omitted).

1. Legal standard: "[A] defendant who explicitly tells his attorney *not* to file an appeal . . . cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* at 477. In contrast, "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005). And even when a client doesn't

directly request an appeal, "counsel generally has a duty to consult with him about an appeal." *Devine*, 520 F.3d at 1288. So even in that circumstance this court must determine "whether counsel in fact consulted with the defendant about an appeal." *Id.*

An attorney who doesn't consult his client about appealing acts in a professionally unreasonable manner "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. In this context, "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.

As for *Strickland*'s prejudice prong, the movant must establish "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[A]lthough showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed," the movant doesn't need to establish "that his hypothetical appeal might have merit" to show prejudice. *Id.* at 486. But evidence that a defendant expressed interest in appealing isn't enough "to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to" appeal. *Id.*

2. Application: Having heard live testimony from Fussell and Tuten, the court credits Tuten's testimony that he and Fussell spoke about a potential appeal a week after sentencing and discredits Fussell's contradictory testimony. Tuten credibly and believably described details of the call, including his recollection that his paralegal transferred the call to him and reminded him that they had closed Fussell's file earlier that week and moved it to an offsite storage facility. And, at times, Fussell struggled to remember what he went over with Tuten before his guilty plea and sentence. For example, when Fussell's attorney asked him if Tuten went over the plea agreement's appeal waiver with him, Fussell answered "no." But on cross-examination, Fussell said that he was "unsure" and that he didn't "remember a lot" because he was "in the county for 33 months."

5

The court recognizes that during Tuten's cross-examination, Fussell's attorney presented evidence that the Clay County Jail logs didn't reflect that Fussell had called Tuten and that Tuten didn't make a note of the call for his case file. Tuten credibly testified that he didn't document Fussell's call because, as explained, he had closed Fussell's file and was storing it off site. And the court doesn't find the Clay County Jail logs dispositive because Tuten vividly described the details of his call with Fussell, such as the bad connection, the specifics of their conversation, and who in his office first answered the call. In short, the court finds that Tuten was being truthful when he testified about speaking with Fussell after sentencing about potentially appealing his conviction.

Tuten testified that at the end of that conversation, he asked Fussell "Do you want me to appeal your case?" And Fussell answered, "No. I guess I'm just fucked and . . . hung up the phone." Because Fussell told Tuten not to file an appeal, the court cannot find Tuten ineffective for failing to appeal Fussell's conviction. *See Flores-Ortega*, 528 U.S. at 477. Plus, Tuten's version of events establish that he satisfied the requirement to consult Fussell about a potential appeal. When Fussell asked Tuten about what his chances on appeal would be, Tuten responded that he had "a snow ball's chance" and reminded Fussell about the appeal waiver in his plea agreement. He also reminded Fussell about their conversations before the guilty plea and that the sentencing judge had reviewed the appeal waiver with Fussell in the courtroom before accepting the guilty plea. Tuten then asked Fussell if he wanted to appeal. The court finds that through this conversation Tuten advised Fussell "about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover [Fussell's] wishes." *Id.* at 478. So Tuten satisfied any duty he would have had to consult Fussell about appealing his conviction.

And Tuten had no duty to consult Fussell following this conversation. Again, this court can find that Tuten performed deficiently only if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. As for the first prong, it is unlikely that a defendant in Fussell's position would want to appeal. The gun ownership

6

argument Fussell made during his conversations with Tuten, the change of plea hearing, and sentencing was frivolous because a person can still knowingly possess a gun if he doesn't own it. And in his plea agreement, Fussell admitted that the firearm was kept in between the mattress and box springs of his bed. (Doc. 8 at 4 in Case No. 4:20-cr-302). Plus, Fussell's appeal waiver allowed him to appeal only these issues: (1) a sentence that exceeded the applicable statutory maximum sentence; (2) a sentence that exceeded the guideline sentencing range; and (3) ineffective assistance of counsel. (*Id.* at 7). The court sentenced Fussell to a below statutory maximum sentence, which was within the guideline range, and the record includes no evidence that Fussell complained about Tuten providing ineffective assistance until he filed his § 2255 motion. So there's no reason to think that a rational defendant would want to appeal Fussell's conviction or sentence.

As for the second prong, Fussell's conversation with Tuten shows that he hadn't reasonably demonstrated that he was interested in appealing. Though Fussell started the conversation by asking Tuten about his chances on appeal, he told Tuten to not appeal after Tuten reminded him of the appeal waiver. As a result, the court finds that Tuten had no duty to further consult with Fussell.

Finally, even if the court were to credit Fussell's version of events, the court would still find that Fussell hadn't established that Tuten performed deficiently by failing to consult Fussell about an appeal or that Tuten's failure to consult prejudiced Fussell. As explained above, there's no reason to think that a rational defendant in Fussell's position would have wanted to appeal because any appeal would have been frivolous. Nor did Fussell reasonably demonstrate to Tuten that he was interested in appealing. To be sure, Fussell questioned the 924(c) charge. But he answered "[y]es, sir" when the sentencing judge asked him if he wished to plead guilty even though that meant his "request for the government to dismiss the 924(c) charge has been rejected." (Doc. 19-1 at 4). And after the Government explained the factual basis for the 924(c) charge at sentencing, Fussell didn't object to the charge again. Nor does Fussell say that he discussed the possibility of filing an appeal on the 924(c) charge with Tuten. So the court finds that Tuten wasn't under a constitutional obligation to consult Fussell about an appeal. *See Otero v. United States*, 499 F.3d 1267, 1271 (11th Cir. 2007).

## CONCLUSION

For the reasons stated above, the court will **DENY** Fussell's motion to vacate, set aside, or correct his sentence (doc. 1) and **DISMISS** this case.

Rule 11 of the Rules Governing § 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See* Rule 11, Rules Governing § 2255 Proceedings. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). The court finds that Fussell's claims fail to satisfy either standard. So the court will not issue a certificate of appealability.

The court will enter a separate final order that carries out these findings and closes this case.

**Done** on November 1, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE